IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CORNELL L. WARREN<br>　　　Plaintiff, | )<br>)　Civil Action No. 08-250 Johnstown<br>) |
| 　　　　　vs. | )　Chief Magistrate Judge Lisa P. Lenihan<br>)　ECF No. 118 |
| MARDI I. VINCENT and<br>SALVATORE CARDENZA<br>　　　Defendants. | )<br>)<br>) |

**MEMORANDUM OPINION ON DEFENDANTS' MOTION
TO DISMISS AMENDED COMPLAINT**

**I.　Summation**

The Motion to Dismiss filed by Defendants Mardi I. Vincent ("Vincent"), a correctional institution Superintendent, and Salvatore Cardenza ("Cardenza"), a correctional institution Sergeant, (also collectively "Defendants"), in this prisoner's Eighth Amendment and Americans with Disabilities Act ("ADA") discrimination action will be denied, as the Amended Complaint states cognizable and plausible claims, as more fully set forth below.

**II.　Factual and Procedural History**

Plaintiff ("Warren") filed his Complaint *pro se* in October, 2008. The initial Complaint alleged a claim of excessive force under the Eighth Amendment and an Equal Protection claim. The Defendants filed a Motion for Judgment on the Pleadings. The Court filed a Reporting

1

Recommendation recommending that the Equal Protection claim be dismissed but that Plaintiff be given leave to amend. He filed an Amended Complaint on October 30, 2009, following which his Equal Protection claim was dismissed but the remainder of Defendants' Motion for Judgment on the Pleadings was denied.

The case proceeded through discovery and was ready for trial. The Court then granted Plaintiff's Motion for appointment of *pro bono* counsel. The Court initiated a search for *pro bono* counsel on May 13, 2010. Current counsel agreed to represent Plaintiff, entering an appearance on April 21, 2011. At the request of new counsel, discovery was reopened and a trial date scheduled. Counsel for Plaintiff filed a motion for leave to file an amended complaint on July 28, 2011. This motion was opposed by Defendants but granted in part and denied in part by the Court on September 22, 2011. The Amended Complaint was filed on September 29, 2011, followed by this Motion.

As amended the Complaint alleges that Plaintiff has been physically and verbally harassed, threatened, denied food and medical treatment, and physically assaulted and injured by prison guards employed at his place of confinement, the State Correctional Institution at Laurel Highlands ("SCI Laurel"). Warren, a prisoner in the Restricted Housing Unit ("RHU"), alleges that this conduct has followed and is in retaliation for an altercation between himself and two prison guards (Officers Lester and Wilt) in December, 2007.[1] He identifies multiple communications to SCI Laurel administration and then-Superintendent Vincent, beginning in February, 2008, informing them of: (a) specific untoward, abusive and threatening conduct by specific guards; (b) his belief that his physical safety is in jeopardy (prior to and after sustaining

---

[1] Plaintiff was charged and convicted of additional criminal offenses. See Defendants' Brief in Support of Motion to Dismiss at 3.

2

a broken finger - allegedly purposefully inflicted by Defendant Cardenza while Plaintiff was pinned to the ground during a cell extraction - in May, 2008, for which requisite surgical treatment was delayed for approximately a month); and (c) his repeated requests that he be transferred to another facility for his protection in accordance with general policies and procedures.  SCI Laurel has responded in writing to Plaintiff's complaints and communications, (a) asserting that his complaints regarding specific guard conduct are unsubstantiated/uncorroborated, his concerns for his safety are unmerited, and his diabetes and need for dialysis necessitates his continued incarceration at SCI Laurel because no other State correctional institution has dialysis equipment;[2] and (b) admonishing him to direct his attention to conformance/compliance to improve the conditions of his incarceration.[3]  Plaintiff further alleges that Superintendent Vincent responded to his May, 2008 broken finger by saying "They broke your finger; you got what you deserved." See Amended Complaint at 5.[4]

Plaintiff's Amended Complaint brings claims under the Eighth Amendment and Title II of the ADA, 42 U.S.C. Section 12132.  The newly added claims are a failure to protect claim against Defendant Vincent and the ADA claim. Presently pending is Defendants' Motion to Dismiss both.

### III. Motion to Dismiss Standard

---

[2] See September 22, 2011 Memorandum Opinion at 2 (noting that transfer request was denied because "SCI-Laurel Highlands is the only DOC facility capable of providing" dialysis).

[3] See, e.g., Defendants' Brief in Support of Motion to Dismiss a 12 (quoting February 29, 2008 letter to Plaintiff); id. at 15 (quoting response to Plaintiff's March 11, 2008 Grievance).

[4] Plaintiff was temporarily transferred to SCI Somerset in May, 2008 but was routinely sent back to SCI Laurel for dialysis, where he continued to be subjected to harassment, and was re-transferred back to SCI Laurel in September, 2008.  See September 22, 2011 Memorandum Opinion (recounting allegations).

A motion to dismiss is an appropriate means of challenging the legal sufficiency of the Complaint. See, *e.g.*, Sturm v. Clark, 835 F.2d 1009, 111 (3d Cir. 1987). It is to be granted where the Complaint fails to set forth facts stating "a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007). See also Ashcroft v. Iqbal, 129 S. Ct.1937, 1949 (May 18, 2009) (citing Twombly, 550 U.S. at 555-57). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Supreme Court has further explained that "[t]he plausibility standard is not akin to a 'probability requirement', but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

In Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the United States Court of Appeals for the Third Circuit described the Rule 12(b)(6) standard in light of Twombly and Iqbal:

> After Iqbal, it is clear that . . . all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible. This then 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible.

Fowler, 578 F.3d at 210 (citations omitted).

The Third Circuit set forth the following two-prong test to be applied by the District Courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to

> 'show' such an entitlement with its facts. . . . This 'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'

Fowler, 578 F.3d at 210-11 (citations omitted).

## IV. Analysis

### Eighth Amendment Failure to Protect Claim

To maintain his failure to protect claim under the Eighth Amendment, Plaintiff must ultimately demonstrate that prison officials failed to take reasonable measures to protect him from violence. See Farmer v. Brennan, 511 U.S. 825 (1994). But more specifically for present purposes, in pleading he must plausibly allege that he "is incarcerated under conditions posing a substantial risk of serious harm" and the SCI Laurel officials "acted with deliberate indifference to his health or safety." Curtician v. Kessler, 2009 WL 2448106, *8 (W.D. Pa. Aug. 7, 2009).[5] The Amended Complaint, well-prepared on Plaintiff's behalf by his present counsel, is no bare-bones assertion of entitlement to relief.  Quite to the contrary, Plaintiff has unquestionably sufficiently plead substantial risk of serious harm where he alleges (a) fear for his safety from an identified individual or group (*i.e.*, named guards or colleagues/friends of the guards with whom he was involved in an altercation), (b) with an objectively reasonable/plausible basis/motivation (*i.e.*, retaliation for a known/documented prior altercation), (c) with particularized instances of verbal and/or physical harassment/abuse and injury, (d) communicated (repeatedly) to prison

---

[5] Deliberate indifference is a question of fact and a defendant's "consciousness of a risk" may be demonstrated by, e.g., circumstantial or other evidence of his/her subjective awareness of risk and disregard thereof.  See Defendants' Brief in Support of Motion to Dismiss at 6-7 (citing Farmer, 511 U.S. at 834-37, requiring showing that defendant was aware of facts supporting inference of substantial risk of serious harm, drew and disregarded such inference). See also id. at 7 (noting that "it may be concluded that a prison official knew of a substantial risk from the very fact that the risk was obvious") (citing Farmer, 511 U.S. at 842-43).

5

officials, including then-Superintendent Vincent, and (e) unheeded or dismissed as unsubstantiated and/or unmerited. See, *e.g.*, Rodriguez v. Hayman, 2009 WL 4122251, *7 (D.N.J. Nov. 23, 2009); cf. Harper v. Albo, 2011 WL 3740815, *4-5 (E.D. Pa. Aug. 24, 2011). Those cases cited in the Government's Motion - in which the inmates' allegations were broad, generalized and/or conclusory; the inmates' complaints neither alleged nor reflected any physical injury; and/or the complaints failed to evidence knowledge on the part of the defendants – are inapposite. Compare, *e.g.*, Day v. Fed. Bureau of Prisons, 233 F. App'x 132, 134 (3d Cir. 2007); Jones v. Beard, 145 F. App'x 743, 745 (3d Cir. 2005); Lyons v. Davis v. Williams, 345 F. App'x 603 (3d Cir. 2009).

As Plaintiff notes, the Government appears to suggest that a correctional institution's determination/declaration that a prisoner's complaints and entreaties are meritless presents – by insulating it from a claim of indifference - a basis for grant of a Motion to Dismiss.[6] This interesting view of the Constitutional rights of incarcerated individuals would, of course, be rather at odds with the well-established principal that, where (a) taken in the light most favorable to the plaintiff plausible claims have been made and, (b) ultimately, sufficient evidence to support a reasonable finding presented, then credibility is to be determined by the fact-finders at trial. A sufficient pleading of deliberate indifference is one which sets forth the plausible allegation that the SCI official(s) consciously knew of (*e.g.*, through a prisoner's communications) and disregarded a substantial risk of harm. See, *e.g.*, Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1966) (reversing dismissal of complaint where prison administration reviewed and refused request for relief from conditions alleged). And the Court further notes that the

---

[6] See Plaintiff's Objections to Defendants' Motion to Dismiss at 13. Compare id. ("It is a prison official's response to a grievance which often establishes its deliberate indifference to the inmate's concern for his safety.").

6

remarks attributed by Plaintiff to Superintendent Vincent (*i.e.*, that Plaintiff "deserved" to have his finger broken), if credited, would not only reflect a similarly crabbed understanding of prisoner's rights, but – significantly – further support inferences that she both had a reasonable expectation/was aware of a substantial risk of harm to Plaintiff during early 2008 (*i.e.*, based on her personal belief that physical retaliation against prisoners involved in an altercation with guards is warranted), and ratified the guards' abusive conduct.[7]

The Complaint also appears, at this stage of the proceedings, to raise a triable issue as to Plaintiff's continued incarceration under the custody of the same guards following additional evidence of a specific, credible threat in the form of a finger broken during an allegedly retaliatory attack.[8] Defendants' assertions in their Motion to Dismiss that Plaintiff's finger was inadvertently broken during a forced extraction necessitated by his own non-compliance speak to factual/credibility questions that are reserved for the jury, and are irrelevant to the analysis at hand.[9]

### Americans with Disabilities Act Claim

To maintain his discrimination claim under Title II of the ADA, Plaintiff must plausibly allege that (1) he is a qualified individual; (2) with a disability; (3) he was (a) excluded from participation in or denied the benefits of the services, programs or activities of a public entity, or (b) subjected to discrimination by any such entity; (4) by reason of his disability. Bowers v.

---

[7] Cf. Plaintiff's Objections to Defendants' Motion to Dismiss at 11 (asserting that "[t]he Superintendent 'knew of and in fact encouraged' the harassment that followed the altercation in December, 2007, and of which Mr. Warren complained repeatedly") (citing Amended Complaint at para. 32).

[8] See September 22, 2011 Memorandum Opinion at 7. Cf. Defendants' Brief in Support of Motion to Dismiss at 13.

[9] See, e.g., Rupert v. PPG Inds., Inc., 2007 WL 3125092, *1 (W.D. Pa. Oct. 24, 2007) ("On a Motion to Dismiss . . . the Court does not weigh the evidence to resolve disputed facts . . . ."). Cf. Defendants' Brief in Support of Motion to Dismiss at 13 & n. 1.

National Collegiate Athletic Assoc., 475 F.3d 524, 553 n. 32 (3d Cir. 2007); cf. Whelan v. Teledyne Metalworkers Prods., 2005 WL 2240078, *6 n. 8 (W.D. Pa. Sept. 24, 2005) (noting liberal standards applied to ADA claims in considering motion to dismiss). It is well settled that Title II of the ADA applies to State prisons. See, *e.g.*, Pa. Dep't of Corr. v. Yeskey, 54 U.S. 206, 210 (1998). Plaintiff is, as the Government concedes, a dialysis patient and a qualified individual with a disability. He has plausibly alleged that he was subjected to discrimination by the prison where he has been, unlike other inmates involved in altercations with guards, denied transfer to a different prison because he is on dialysis. See Plaintiff's Objections to Defendants' Motion to Dismiss at 17 (citing allegation that Plaintiff was informed transfer was "impossible due to your dialysis").[10]

Plaintiff has also alleged that SCI officials have refused to provide reasonable accommodation, such as transfer to another State or Federal prison with dialysis treatment available, or transfer to another prison with dialysis provided at an offsite medical facility. See Amended Complaint at 6. The ADA imposes on SCI Laurel an affirmative obligation to provide reasonable accommodations for qualified, disabled individuals. Under the allegations of the Amended Complaint, this question is not appropriate for disposition at this stage. See Plaintiff's

---

[10] As Plaintiff observes, the Third Circuit has not expressly addressed whether the "or was subjected to discrimination by any such entity" clause of Section 12132 - which, on its face and under a plain reading of the statute appears to set forth alternative, independent, and intentionally broader grounds - is in fact a "catch-all provision" against discrimination. See Plaintiff's Objections to Defendant's Motion to Dismiss at 17-18 & n. 4. But cf. Mutschler v. SCI Albion CHCA Health Care, 2011 WL 4454189, *3 (3d Cir. 2011) (observing that violation of Title II requires allegations that individual "was either excluded from participation in or denied the benefits of some public entity's services, programs or activities" and such "exclusion, denial of benefits, or discrimination was by reason of" disability); but see Behar v. Pa. Dept. of Transp., 2011 WL 1195896, * 11 (M.D. Pa. Mar. 31, 2011) (finding that clause is not a catch-all provision). Although this Court would be inclined, in the absence of contrary precedent, to read the statute in accordance with the usual laws of construction and give effect to its plain meaning, it need not determine this question of interpretation. It finds Plaintiff's additional grounds – *i.e.*, that Plaintiff states a colorable claim that the protective transfer of inmates at substantial risk of harm following altercations with guards is a "service, program or activity" of the SCI, provided to prisoners in Government custody, and within the meaning of the statute – persuasive. See Plaintiff's Objections to Defendants' Motion to Dismiss at 18-19 and cases cited therein.

Objections to Defendants' Motion to Dismiss at 20; Zombeck v. Friendship Range, 2011 WL 6662000 (W.D. Pa. Feb. 14, 2011) ("The question of whether a proposed accommodation is reasonable is a question of fact.").

Where Plaintiff presents specific, plausible allegations that he is being required to compromise or relinquish his personal safety because he requires treatment for a medical disability, and where potentially reasonable/feasible accommodations exist - through a program/procedure for transfer generally provided for the safety of other inmates involved in guard altercations but not provided to Plaintiff, he is entitled to maintain his ADA claims.

## V. Conclusion

An Order consistent with this Memorandum Opinion, denying Defendants' Motion to Dismiss, will follow.

_____
LISA PUPO LENIHAN
United States Chief Magistrate Judge

Dated: February 21, 2012